UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Milton C. Miller,

      Petitioner,

      v.

Warden Noble Correctional Institution,

      Respondent.

Case No. 2:26-cv-36

Judge Michael H. Watson

Magistrate Judge Merz

## OPINION AND ORDER

Petitioner, proceeding without the assistance of counsel, seeks a writ of habeas corpus. Petition, ECF No. 1. The Petition raises only one claim: ineffective assistance of appellate counsel. *Id.* at PAGEID # 5. The Magistrate Judge issued a Report and Recommendation ("R&R"), which recommended that the Court dismiss the Petition as untimely. R&R, ECF No. 9. Petitioner objects. Obj., ECF No. 10.

## I.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b)(3), the Court reviews *de novo* those portions of the R&R to which Petitioner properly objected.

## II.    ANALYSIS

### A. Claim Construction

As an initial matter, Petitioner argues that the Magistrate Judge conservatively construed his claim as one for *ineffective assistance* of appellate counsel, when it was one for *deprivation* of appellate counsel. Obj., ECF No. 10

at PAGEID ## 270–71.  He seems to contend that his claim was properly titled "nominal representation" and alleged that counsel "only appeared in name and offered no effective assistance," *see* Petition, ECF No. 1 at PAGEID # 5; therefore, the Magistrate Judge should have construed it as a claim for the constructive denial of appellate counsel instead of a claim for the ineffective assistance of appellate counsel, Obj., ECF No. 10 at PAGEID ## 270–71.  The Court construes this objection as an argument that Petitioner's claim, if considered on the merits, should be entitled to a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648 (1984) instead of being subjected to the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

This objection to the improper characterization of Petitioner's claim is overruled.  Petitioner alleged that counsel was appointed for his direct appeal, that said counsel convinced him to voluntarily dismiss that appeal, and that the advice to dismiss was not effective.  *See* Petition, ECF No. 1 at PAGEID # 5.  Moreover, the record shows that appellate counsel drafted a fulsome motion to dismiss, explaining why a voluntary dismissal was appropriate, and that Petitioner signed a document acknowledging that he reviewed transcripts with and consulted with counsel multiple times before agreeing to voluntarily dismiss the appeal.  ECF No. 5 at PAGEID ## 58–64.  Petitioner therefore cannot show that he was constructively denied the assistance of appellate counsel.  Rather, he merely contends that appellate counsel's recommendation was deficient.  And an allegation that appellate counsel's considered strategic choice was deficient is

best understood as an ineffective-assistance-of-appellate-counsel claim. *Brown v. Warden, Mansfield Corr. Inst.*, No. 2:10-CV-0105, 2011 WL 672200, at *1 (S.D. Ohio Feb. 16, 2011) (rejecting argument that *Cronic* applies where appellate counsel convinced petitioner to voluntarily dismiss appeal), *aff'd*, 492 F. App'x 533 (6th Cir. 2012). The Magistrate Judge properly construed the sole claim in Petitioner's Petition.

## B. Statute of Limitations

The ultimate issue is whether the Petition is timely.

28 U.S.C. § 2254 contains a one-year statute of limitations, which begins on the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §§ 2244(d)(1)(A)–(D). Regardless of when the statute of limitations starts to run, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or

claim is pending shall not be counted toward" the running of the statute of limitations. *Id.* § 2244(d)(2).

### 1. Commencement of the Statute of Limitations

The Court must first determine the date on which the statute of limitations began to run. That, in turn, requires determining which subsection of § 2244(d)(1) triggered the statute of limitations.

By calculating the statute of limitations from the date his delayed appeal was dismissed, Petitioner clearly relied in his Petition on § 2244(d)(1)(A)'s "date on which the judgment became final" as the relevant subsection. *See* Petition, ECF No. 1 at PAGEID ## 8–9. So did Respondent. *See* Resp., ECF No. 6 at PAGEID ## 249–50. Petitioner relied on that subsection again in his Traverse. Traverse, ECF No. 8 at PAGEID # 260 ("[T]here is no opposition to the AEDPA's clock beginning to run on June 22, 2024."). The R&R, too, calculated the statute of limitations pursuant to § 2244(d)(1)(A), starting the clock on the date the conviction became final. R&R, ECF No. 9 at PAGEID # 266 ("We begin with the question when the conviction became final."). In other words, Petitioner, Respondent, and the Magistrate Judge determined the start of the statute of limitations pursuant to § 2244(d)(1)(A), by analyzing the date Petitioner's conviction became final.

On objection, however, Petitioner contends that that approach was wrong. He argues that he was "duped into arguing that 28 U.S.C. § 2244(d)(1)(A) governed the timeliness analysis" but that § 2244(d)(1)(D)—which starts the

clock on the date a petitioner could have discovered the factual predicate for his claim—should control.  Obj., ECF No. 10 at PAGEID # 271.  Under that approach, he further asserts, he could not have known the factual predicate for his ineffective-assistance-of-appellate-counsel claim until his state postconviction motion was denied.  *Id.*  So, he argues, the statute of limitations should commence on April 10, 2025 (one day after the period to appeal the Franklin County Common Pleas Court's denial of his postconviction motion).  *Id.*

Respondent retorts that Petitioner forfeited this argument by raising it for the first time in his objections, and the Court should therefore not consider it.  Resp., ECF No. 11 at PAGEID ## 277–78.  Respondent alternatively argues that Petitioner misapplies § 2244(d)(1)(D).  *Id.* at PAGEID # 278.

The Court agrees with Respondent that Petitioner forfeited the argument that § 2244(d)(1)(D), as opposed to (d)(1)(A), applies by raising it for the first time in his objections to the R&R.  *E.g.*, *Bishop v. Warden, Noble Corr. Inst.*, No. 2:24-cv-04063, 2024 WL 2858040, at *3 (S.D. Ohio Oct. 9, 2025) ("Petitioner's objection fails to provide any reason why he did not argue for the application of subpart (D) earlier.  Absent a compelling reason, an issue or claim raised for the first time in objections to a report and recommendation is deemed waived." (citation omitted)); *cf. Cowell v. Gray*, No. 23-3856, 2024 WL 4626475, at *3 (6th Cir. Apr. 29, 2024) ("As a preliminary matter, we decline to consider any new arguments that Cowell may be attempting to raise on appeal, such as whether his petition is timely under § 2244(d)(1)(B)." (citation omitted)).  Moreover,

Case No. 2:26-cv-36                                                        Page 5 of 13

Petitioner was not "duped" into arguing only that § 2244(d)(1)(A) applies here—Petitioner was the master of his Petition, and he chose to rely only on that subsection. Accordingly, the Court will not consider Petitioner's newly raised argument.

Alternatively, the argument lacks merit. The factual predicate for Petitioner's ineffective-assistance-of-appellate-counsel claim is that appellate counsel advised him to voluntarily dismiss his appeal and instead raise his putative appellate claims via a postconviction motion. His argument that the state court's denial of his postconviction motion gave rise to the factual predicate for his claim—because it was only upon the denial of his postconviction motion that he realized appellate counsel's advice was deficient—is incorrect.

First, as noted below, Petitioner discusses the "incorrect" advice in the postconviction motion itself, *see* ECF No. 5 at PAGEID # 137, so the subsequent denial of that motion could not have precipitated his knowledge.

Second, nothing in the Franklin County Common Pleas Court's Opinion and Order denying Petitioner's postconviction motion on the merits suggests that appellate counsel's advice regarding dismissing the direct appeal was deficient (for example, the state court did not dismiss the claims in the postconviction motion as procedurally defaulted). *See* ECF No. 5 at PAGEID ## 165–69. So, nothing in the Opinion and Order would inform Petitioner that the prior advice was incorrect. To be sure, the mere fact that the postconviction motion failed on

the merits does not suggest that the arguments contained in that motion were better suited for a direct appeal.

Plainly, Petitioner knew of appellate counsel's advice when Petitioner agreed to voluntarily dismiss the direct appeal (and he was prejudiced, if at all, on the date the appeal was dismissed); that date, therefore, triggered the statute of limitations even under a § 2244(d)(1)(D) analysis. *Dunn v. Forshey*, No. 20-3819, 2020 WL 8373359, at *2 (6th Cir. Dec. 7, 2020) (rejecting the petitioner's argument that he could not have known of the predicate facts for an ineffective-assistance-of-appellate-counsel claim when appellate counsel coerced him to voluntarily dismiss his direct appeal and stating, "all the relevant facts were available to him when he dismissed his appeal"). Because that date precedes the date this Court will apply under a § 2244(d)(1)(A) analysis,[1] the Court will analyze the statute of limitations pursuant to (d)(1)(A).

## 2. Calculation of the Statute of Limitations

The final issue, then, is whether the Petition was timely under § 2244(d)(1)(A). Petitioner was convicted on October 11, 2023, and the judgment entry was issued on December 13, 2023. ECF No. 5 at PAGEID ## 30–38. Petitioner did not immediately pursue a direct appeal, and the statute of limitations began to run when his time to do so expired.

---

[1] Petitioner fails to explain why the Court would include the appellate period under § 2244(d)(1)(D) when he argues that the factual predicate became known with the issuance of the Order.

But, the Tenth District Court of Appeals thereafter granted Petitioner's motion for a delayed appeal.  ECF No. 5 at PAGEID # 41, 54.  That restarted the statute of limitations.  *Cf. Gonzales v. Thaler*, 565 U.S. 134, 152 (2012) ("[A] state court's reopening of direct review will reset the limitations period." (citing *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009)).

Petitioner's direct appeal was dismissed on May 7, 2024.  ECF No. 5 at PAGEID # 65.  At the latest, then, the statute of limitations began to run on June 22, 2024 (the forty-sixth day following May 7, 2024).  *Gonzales*, 565 U.S. at 150 ("For petitioners who pursue direct review all the way to th[e Supreme] Court, the judgment becomes final at the 'conclusion of direct review'—when th[e Supreme] Court affirms a conviction on the merits or denies a petition for certiorari.  *For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review . . .  in state court, expires.*" (emphasis added)); *Reid v. Erdos*, 1:17CV580, 2017 WL 10717328, at *5 (N.D. Ohio Oct. 20, 2017) ("[T]he Court finds Reid's conviction and sentence became 'final' for purposes of § 2244(d)(1)(A) . . . forty five (45) days after the state appellate court voluntarily dismissed his appeal and the time to file a timely notice of appeal with the Supreme Court of Ohio expired."), *R&R adopted by* 2018 WL 6380308; Ohio S. Ct. Pract. R. 7.01(A)(1) ("To perfect a jurisdictional appeal from a court of appeals to the Supreme Court . . . , the appellant shall file a notice of appeal in the Supreme Court within forty-five days

from the entry of the judgment being appealed.").  The Court assumes June 22, 2024, triggered the running of the statute of limitations in this case. [2]

The statute of limitations ran from June 22, 2024, until February 11, 2025, when Petitioner filed a postconviction motion in state court.  ECF No. 5 at PAGEID ## 132–48.  A total of 234 days lapsed during that period.

Despite Respondent's argument to the contrary, the statute of limitations started again on April 10, 2025, which was the day after the deadline to appeal the state court's March 10, 2025, denial of Petitioner's postconviction motion (even though Petitioner did not appeal).  *See* Resp., ECF No. 11 at PAGEID # 276 ("That said, Petitioner did not appeal the denial of his petition, so he does not receive any tolling for the time in which he could have appealed."); ECF No. 5 at PAGEID ## 165–71; *Welch v. Plappert,* 169 F.4th 707, 711 (6th Cir. 2026) (restarting the habeas statute of limitations the day after the deadline to appeal

---

[2] According to several unpublished Sixth Circuit opinions, though, the statute of limitations began to run on May 8, 2024, the day after the voluntary dismissal.  *Crespo v. Mackey,* No. 25-3104, 2025 WL 4349335, at *2 (6th Cir. Aug. 22, 2025) ("Under § 2244(d)(1)(A), Crespo's conviction became final on January 17, 2017, when the Ohio Court of Appeals granted his motion to voluntarily dismiss his appeal.  The statute of limitations began to run the next day . . . ." (internal citations omitted)); *Jenkins v. Turner,* No. 19-3105, 2019 WL 7906086, at *1 (6th Cir. Mar. 27, 2019) ("Jenkins's conviction became final on July 15, 2009, when the Ohio Court of Appeals granted his motion to voluntarily dismiss his appeal.  The statute of limitations commenced the next day . . . ." (internal citation omitted)); *cf. United States v. Newbill,* No. 2:20-cv-171, 2020 U.S. Dist. LEXIS 247014, at *5 (E.D. Ky. Dec. 15, 2020) ("Newbill's judgment became final upon the conclusion of her direct appeal on December 5, 2019, when the Sixth Circuit granted her motion to voluntarily dismiss her appeal." (citations omitted)), *R&R adopted by* 2021 U.S. Dist. LEXIS 4742, *cert. of appealability denied by* 2021 U.S. App. LEXIS 23702.  Absent a published opinion from the Sixth Circuit holding that *Gonzales*'s plain language does not apply to voluntary dismissals, the Court will err on the side of caution and use June 22, 2024, as the trigger date for the statute of limitations.

the state court's denial of postconviction relief); *Holbrook v. Curtin*, 833 F.3d 612, 619 (6th Cir. 2016) ("AEDPA's one-year statute of limitations was tolled during the period in which he could have, but did not, appeal the Michigan Court of Appeals' denial of his motion for post-conviction relief.").

Petitioner argues that the clock stopped again 104 days later (on July 23, 2025), when he moved to reinstate his direct appeal. Obj., ECF No. 10 at PAGEID # 273; *see also* ECF No. 5 at PAGEID ## 68–74 (motion to reinstate direct appeal). The Court disagrees.

By its plain terms, § 2244(d)(2) applies to "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgement or claim." 28 U.S.C. § 2244(d)(2). The Court agrees with the Magistrate Judge here that a motion to reinstate a *direct* appeal is neither an application for State postconviction review or for other *collateral* review. R&R, ECF No. 9 at PAGEID # 267 ("[A] motion to reinstate a voluntarily dismissed appeal is not a collateral attack on the judgment, but an attempt to reinstate a direct attack."); *Welch*, 169 F.4th at 709 ("An appeal is not an 'application' for relief, as § 2244 consistently uses the word 'application' to refer to an initial habeas petition.").

Importantly, even if the Court generously construed Petitioner's motion to reinstate the appeal as a Rule 26(B) application to reopen the appeal, such motion was untimely under Ohio law and therefore would still not suffice to toll the statute of limitations.

"[A] Rule 26(B) motion to reopen is a part of the collateral review process . . . ." *Nelson v. Jenkins*, No. 17-4068, 2018 WL 1756633, at *1 (6th Cir. Feb. 14, 2018) (citation omitted). As such, a "properly filed" Rule 26 application warrants statutory tolling. 28 U.S.C. § 2244(d)(2).

But Ohio Rule of Appellate Procedure 26(B) requires applications to reopen to be filed "within ninety days from journalization of the *appellate judgment* unless the applicant shows good cause for filing at a later time." Ohio R. App. P. 26(B)(1) (emphasis added).

Here, the appellate judgment was entered on May 7, 2024, and Petitioner did not move to reinstate the direct appeal until July 23, 2025—over a year later. Indeed, even though he argued as early as his postconviction motion that he should not have dismissed his direct appeal (and therefore knew of the potential grounds for reinstating that appeal), *see* ECF No. 5 at PAGEID ## 135–37, he did not move for reinstatement within ninety days of the expiration of the April 9, 2025, deadline to appeal the trial court's denial of the postconviction motion. Nor did Petitioner make *any* attempt under Ohio Rule of Appellate Procedure 26(B) to show good cause for missing the ninety-day deadline. Accordingly, even if the Court generously construed Petitioner's motion to reinstate appeal as a Rule 26(B) application—and there is no indication the state appellate court construed it as such—the application was not "properly filed" because it was untimely, so it does not toll the statute of limitations. *Cf. Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) ("When a postconviction petition is untimely under state law, that is

the end of the matter for purposes of § 2244(d)(2)." (cleaned up)); *Baker v. Hunsinger-Stuff*, No. 23-3273, 2023 WL 6379759, at *2 (6th Cir. Sept. 1, 2023) ("Baker's Rule 26(B) motion . . . did not toll the limitations period because it was denied as untimely and therefore was not 'properly filed' for purposes of § 2244(d)(2)." (citation omitted)); *see also* ECF No. 5 at PAGEID # 86 (denying motion to reinstate without even arguably considering the merits of the same).

### 3. Statute of Limitations Conclusion

To summarize, if, because Petitioner voluntarily dismissed his appeal, the statute of limitations began under § 2241(d)(1)(A) on May 8, 2024, then it matters not whether the motion to reinstate warranted tolling.  The statute of limitations in that scenario ran from May 8, 2024, until February 11, 2024 (279 days), and started again on April 10, 2025, making the Petition due no later than July 7, 2025.  The July 23, 2025, motion to reinstate could not toll the already-lapsed statute of limitations.

If, on the other hand, the statute of limitations began after the period for appealing Petitioner's voluntary dismissal, then the Petition's timeliness hinges on whether the motion to reinstate tolled the statute of limitations.  In that scenario, the statute of limitations ran from June 22, 2024, to February 11, 2025 (234 days).  It started again on April 10, 2025, but only 104 days would have passed before Petitioner moved for reinstatement.  Thus, a total of only 338 days would have run on the statute of limitations by the time Petitioner moved for reinstatement.  Assuming the limitations period remained tolled during the motion

for reconsideration and subsequent appeals concerning the denial of reinstatement, it would not have started again until December 24, 2025. Only twelve days passed from that date until Petitioner filed his Petition via the prison mail system such that his Petition would be timely.

For the above reasons, though, the Court concludes that the statute of limitations was statutorily *not* tolled with the filing of Petitioner's motion to reinstate.

Petitioner does not argue for equitable tolling, and the Court finds no grounds for the same given that Petitioner was aware of his sole ground for relief when he dismissed his direct appeal.

Accordingly, the Court **DENIES** the Petition as untimely. The Clerk **SHALL** enter judgment for Respondent and terminate this case.

However, the Court finds it debatable whether Petitioner presents a valid claim for the denial of a constitutional right and whether this Court was correct in its statute of limitations analysis. Accordingly, the Court **GRANTS** a certificate of appealability on the statute of limitations determination and **DECLINES** to find that an appeal would be frivolous.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**